Max S. Morgan, Esquire (to seek *pro hac vice*)
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| CHRISTOPHER SCHULTZ, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>HOMESMART INTERNATIONAL, LLC, NATOSHA MOORE, and ELEAZAR MEDRANO,<br><br>*Defendants*. | Case No.:<br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY DEMAND** |

**INTRODUCTION**

1.   This action arises out of the relentless marketing practices of Defendants, HomeSmart International, LLC d/b/a HomeSmart ("HomeSmart"), Natosha Moore ("Moore"), and Eleazar Medrano ("Medrano") (HomeSmart, Moore and Medrano, collectively, "Defendants"), that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

2.   Medrano and Moore are employees and/or agents of HomeSmart.[1]

3.   Defendants make unsolicited telemarketing calls that solicit HomeSmart's services.

4.   Defendants also send unsolicited telemarketing text messages that solicit HomeSmart's services.

---

[1] During the times relevant to this Class Action Complaint, Moore and Medrano's license information available online identified their employer as "HomeSmart." *See* https://services.azre.gov/ (last accessed May 13, 2024).

5. Defendants continue to make these calls and send text messages even after the called party requests that Defendants cease calling.

6. The TCPA prohibits making telemarketing calls to a person who, like Mr. Schultz, has previously asked <u>not</u> to receive such calls and text messages and makes sellers like Defendants liable for calls in violation of the TCPA's internal do-not-call rules.

7. Accordingly, Mr. Schultz brings this action on behalf of himself and a class of similarly situated individuals.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9. This Court has jurisdiction over Defendants because Defendants are located in this District, Defendants conduct business transactions in this District and Defendant made calls and sent text messages into and/or within this District as part of the business Defendants conducts in this District.

10. Venue is proper in this District because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

11. Plaintiff Christopher Schultz ("Mr. Schultz") is, and at all times mentioned herein was, a citizen and resident of Scottsdale, Arizona.

12. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13. HomeSmart is, and at all times mentioned herein was, an Arizona limited liability company headquartered at 8388 E. Hartford Drive, Suite 100, Scottsdale, Arizona 85255.

14. HomeSmart is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C.

§ 153(39).

15. Moore is, and at all times mentioned herein was, a natural person and employee or agent of HomeSmart.

16. Moore is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. Medrano is, and at all times mentioned herein was, a natural person and employee or agent of HomeSmart.

18. Medrano is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

## TCPA BACKGROUND

19. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

20. Relevant here, the TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21. The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.*

22. Pursuant to this statutory mandate, the FCC established company-specific "do not call"

rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

24. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

25. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

26. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

27. These policies and procedures prohibit a company from making calls for telemarketing purposes[2] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

---

[2] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

28. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

29. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

30. Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

31. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

32. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

33. Finally, text messages, such as the ones sent by Defendant, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## HOMESMART BACKGROUND

34. HomeSmart is a real estate brokerage.

35. HomeSmart provides its employees/realtors, such as Moore and Medrano, with tools, training and instruction to further their joint business efforts – which include blasting potential leads with mass text messages and calls to generate clients.[3]

36. One of the tools that HomeSmart provides to its employees/realtors is the kvCORE platform – a technology tool that includes a "smart CRM" that allows its employees/realtors to make calls and send emails, text messages and voicemail drops en masse.[4]

37. The kvCORE platform allows for mass texting:

[5]

38. The kvCORE platform allows for mass calling:

---

[3] https://homesmart.com/hsadvantage/#:~:text=HomeSmart%20is%20Committed%20to%20Your,all%20in%20one%20convenient%20place! (last accessed May 13, 2024).
[4] https://help.insiderealestate.com/en/articles/4365204-kvcore-sending-text-messages-to-your-contacts-overview (last accessed May 13, 2024).
[5] *Id.*

Class Action Complaint - Page | 6

> **Using CORE Voicemail Drop**
>
> Voicemails can be sent to individual contacts or be sent to multiple contacts at once all from your Smart CRM.

[6]

39.  In addition to providing the "tools" to carry on en masse telemarketing operations, HomeSmart provides instruction and further support, including but not limited to scripts.

> 4. **Lead generation:** Texting is fantastic for generating leads and nurturing existing leads into customers. Thursday is the best time to engage leads with texts—it's close enough to the weekend to get people excited about open houses and showings, but not so close that they might already have plans. (HomeSmart offers agents scripts in our Marketing Design Center to help with these lead generation texts.)

[7]

40.  HomeSmart also offers live and recorded trainings to its employees/realtors and instructs its agents to engage in mass marketing campaigns.

41.  For example, HomeSmart's Chief Industry Officer, Todd Sumney offers a webinar series and podcasts where he offers text messaging scripts and instruction on generating business using these tools.[8]

## PLAINTIFF'S FACTUAL ALLEGATIONS

42.  Mr. Schultz is the user of a cellular telephone number (XXX)-XXX-6064.

43.  Mr. Schultz's cellular telephone number (XXX)-XXX-6064 is used for residential purposes.

44.  On or about March 5, 2021 at 1:35am, Mr. Schultz began receiving text messages and telephone calls from HomeSmart and Medrano soliciting him with HomeSmart's real estate services:

---

[6] https://help.insiderealestate.com/en/articles/3710280-core-marketplace-core-voicemail-drop-overview (last accessed May 13, 2024).
[7] https://blog.homesmart.com/text-for-success-smart-ways-real-estate-agents-can-leverage-smartphones (last accessed May 13, 2024).
[8] https://www.youtube.com/watch?app=desktop&v=Yv5nvzAG4hg (last accessed May 13, 2024).



45. On March 8, 2021 at 10:24am, Mr. Schultz received another text message from HomeSmart and Medrano, again soliciting him with HomeSmart's real estate services:



46. On March 10, 2021 at 9:05am, Mr. Schultz received another text message from HomeSmart and Medrano, again soliciting him with HomeSmart's real estate services:



47. As shown above, Mr. Schultz politely responded and advised HomeSmart and Medrano that he had an agent – an obvious response that should have alerted HomeSmart and Medrano that he was not interested in their real estate services.

48. On March 12, 2021 at 8:21am, Mr. Schultz received another text message from HomeSmart and Medrano, again soliciting him with HomeSmart's real estate services:

49. This time, Mr. Schultz responded and specifically requested no further contact by HomeSmart and Medrano:



50. On March 20, 2021 at 11:30am, Mr. Schultz received another text message from HomeSmart and Medrano, again soliciting him with HomeSmart's real estate services:



51. As shown above, Mr. Schultz again instructed HomeSmart and Medrano to stop contacting him.

52. Despite his repeated requests, on March 26, 2021 at 12:52pm, Mr. Schultz received another text message from HomeSmart and Medrano, again soliciting him with HomeSmart's real estate services:

> 3:14
>
> +1 (480) 800-0272
>
> Mar 26, 2021 at 12:52 PM
>
> Christopher We are now three weeks since your initial interest in one of our homes for sale. Time sure does fly! My team has continued to send you homes available and we hope to find the one you're looking for. We've also given you an opportunity to join our private client group (the offer still stands!) to look at off-market properties that may be of interest to you, along with so many more resources available. In addition, we host home buying classes that will educate you on the experience as well as include a comprehensive overview for what to expect. Is this something that would be of interest to you? If so, reply with Yes and the agent assigned to you on my team will reach out immediately to get you registered  As always, thank you for your interest, we look forward to speaking with you soon!

53. Again, Mr. Schultz responded and instructed HomeSmart and Medrano to stop contacting him:

> This is my last request, stop contacting me immediately. I have indicated 2-3 times since March 10th to stop contacting me.
>
> Read

54. Upon information and belief, these were automated messages sent in bulk using HomeSmart's technology provided to Medrano.

55. On October 24, 2022, Mr. Schultz received another text message from HomeSmart and Moore[9], again soliciting him with HomeSmart's real estate services:



56. As shown above, Mr. Schultz immediately responded and requested not to be contacted.

57. On January 10, 2023, Mr. Schultz received another text message from HomeSmart and Moore, again soliciting him with HomeSmart's real estate services:



---

[9] Upon information and belief, Patrick Harris was an employee or agent of Moore and/or HomeSmart who's job function was to assist Moore with marketing, lead generation and growth.

58. Again, Mr. Schultz responded and asked not to be contacted further:

59. Despite this, Mr. Schultz received additional text messages from HomeSmart and Moore, again soliciting him with HomeSmart's real estate services on March 9, 2023, March 16, 2023, March 18, 2023, May 6, 2023 (twice) and May 9, 2023 (twice):



60. On May 9, 2024, Mr. Schultz responded "STOP" and received an automated unsubscribe message:



61. Upon information and belief, these were automated messages sent in bulk using HomeSmart's technology provided to Moore.

62. On July 14, 2023, Mr. Schultz received a call from Patrick Harris on behalf of Moore.

63. Mr. Schultz called Mr. Harris back and again reminded him that he asked not to be contacted.

64. Despite this, on July 19, 2023, Mr. Schultz received another call from Patrick Harris on behalf of Moore.

65. Mr. Schultz called Mr. Harris back and again reminded him that he asked not to be contacted.

66. Mr. Schultz did not provide prior express invitation or permission or consent for these telephone calls or text messages.

67. To the contrary, in response to the unwanted calls and text messages, Mr. Schultz repeatedly requested that they stop.

68. Defendants' violations were negligent.

69. Alternatively, Defendants' violations were willful and knowing.

70. Mr. Schultz and the Class were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendants' calls and text messages temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls and text messages. Defendants' telephone calls and text messages were annoying and a nuisance, and wasted the time of Mr. Garvey and the class members. *See, e.g., Mims,* 565 U.S. at 372.

## DEFENDANTS' LIABILITY

71. Defendants used automated systems to make outbound telephonic sales calls and send outbound telemarketing text messages to hundreds if not thousands of consumers across the U.S.

72. Defendants made two or more telephone solicitations to Mr. Schultz, and did not honor or record his do-not-call request. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

73. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Mr. Schultz is entitled to $500 per call through 47 U.S.C. § 227(c).

74. Mr. Schultz is entitled to $1,500 per call if Defendants' actions are found to be knowing or willful.

75. Defendants, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on their behalf, conspired to, agreed to, contributed to, authorized, facilitated, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls and text messages that are the subject matter of this Complaint.

## CLASS ACTION ALLEGATIONS

76. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a proposed "Class," as defined as follows:

### THE CLASS

Plaintiff and all persons within the United States who, within the four years prior to the filing of the original Complaint through the date of class certification, (1) received two or more calls or text messages within any 12-month period, (2) encouraging the purchase of Defendant's goods or services, (3) to said person's residential telephone number, (4) after requesting that Defendant or Defendant's vendor's stop calling or making similar request.

(the "Internal DNC Class" or "Class").

77. Excluded from the Class are (1) Defendants and any entities in which Defendants have a controlling interest; (2) Defendants' agents and employees; (3) any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families; and (4) any claims for personal injury, wrongful death, and/or emotional distress.

78. The Members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

79. The exact number and identities of the persons who fit within the Class are ascertainable in that Defendants and third parties maintain written and electronically stored data showing:

   a. The time period(s) during which Defendants made the telephone calls and sent text messages;

   b. The telephone numbers to which Defendants made telephone calls or sent text messages;

   c. The telephone numbers for which Defendants had prior express written consent;

   d. The purposes of such telephone calls and text messages; and

   e. The names and addresses of Class members.

80. The Class is comprised of hundreds, if not thousands, of individuals.

81. There are common questions of law and fact affecting the rights of the Members of the Class, including, *inter alia*, the following:

   a. Whether Defendants make telemarketing calls;

   b. Whether Defendants obtain prior express written consent;

   c. Whether Defendants fails to honor do-not-call requests and continues to make solicitation calls or send solicitation text messages to individuals that have previously asked that calls stop;

   d. Whether Defendants' statutory violations were willful and knowing; and

e. Whether Defendants should be enjoined from engaging in such conduct in the future.

82. Plaintiff is a member of the Class in that Defendants placed two or more calls/text for telemarketing purposes, in a one-year period to his telephone number, without his prior express written consent, and after he requested that the calls stop.

83. Plaintiff's claims are typical of the claims of the Members of the Class in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

84. Plaintiff and all putative Members of the Class have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Class spent time tending to Defendants' unwanted calls and text messages and suffered a nuisance and an invasion of their privacy.

85. Plaintiff has no interests antagonistic to, or in conflict with, the Class.

86. Plaintiff will thoroughly and adequately protect the interests of the Class, having retained qualified and competent legal counsel to represent him and the Class.

87. Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate for the Class.

88. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

89. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

90. Common questions will predominate, and there will be no unusual manageability issues.

# FIRST CAUSE OF ACTION
## Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Internal DNC Class)

111. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> **(1)** *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2)** *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3)** *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> \*     \*     \*
>
> **(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(3),(6).

112. Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

113. Plaintiff and the Internal DNC Class members made requests to not receive future solicitations.

114. Defendants failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

115. As outlined in detail above, Defendants violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honor opt-out requests.

116. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call/text message sent by, or on behalf of, Defendants.

117. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

118. Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendants' illegal conduct in the future, pursuant to section 227(c)(5).

**WHEREFORE**, Plaintiffs respectfully request the Court grant Plaintiff and the Class members relief against Defendant as set forth in the Prayer for Relief below.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Mr. Schultz as the representative of the Class and appointing his counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

C. An award of injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. An award of statutory damages;

E. An award of treble damages; and

F. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

92. Pursuant to the Seventh Amendment to the Constitution of the United States of America, and in accordance with Fed R. Civ. P. 38, Plaintiff demands a trial by jury.

Dated: July 10, 2024

                                                 *s/Max S. Morgan*
Max S. Morgan, Esquire*
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

(*pro hac vice forthcoming)